UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA REINVESTMENT COALITION, NATIONAL ASSOCIATION FOR LATINO COMMUNITY ASSET BUILDERS, DEBORAH LYNN FIELD, and RESHONDA YOUNG,<br><br>        Plaintiffs,<br><br> v.<br><br>KATHLEEN L. KRANINGER, Director, Consumer Financial Protection Bureau, In Her Official Capacity and CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>        Defendants. | No. 4:19-cv-02572-JSW<br><br>**DECLARATION OF RESHONDA YOUNG** |

DECLARATION OF RESHONDA YOUNG - 1
Case No.: 4:19-cv-02572-JSW

**DECLARATION OF RESHONDA YOUNG**

I, ReShonda Young, declare as follows:

1. The facts in this declaration are based on my personal knowledge.

2. I am the founder and owner of Popcorn Heaven LLC, a small retail business selling gourmet popcorn.

3. I launched Popcorn Heaven in Waterloo, Iowa in 2013, with a business plan that I believed could support a licensing business of popcorn stores in cities across the country. That vision has proven correct: I received unsolicited inquiries from potential licensees within three months of opening my first store, and Popcorn Heaven locations has so far opened in seven additional cities, with two more expected this year.

4. At all turns, however, obtaining capital has been the greatest obstacle to the success and growth of w Heaven and to me as a small business owner and entrepreneur.

5. When I founded Popcorn Heaven in 2013, I sought an $80,000 loan to get the business off the ground and establish operating capital. At the time, I had spent the past decade as the Operations Manager and Corporate VP of a family transportation business, which grew from $600,000 in annual revenue when I started to almost $3 million annually within five years—despite the intervening financial collapse. I also had a credit rating of over 700 and significant income and assets with which to secure the loan, as well as established relationships with multiple local banks and credit unions.

6. Despite my excellent qualifications, I could barely get my loan application considered. I first contacted a credit union where I had done personal banking for nearly 20 years.[1] When I emailed them my application, I was told that it looked fine; but after we met in person (and

---

[1] The First Amended Complaint mistakenly said that this was the second institution I approached. It was actually the first, followed by the bank discussed in the next paragraph.

DECLARATION OF RESHONDA YOUNG - 2
Case No.: 4:19-cv-02572-JSW

they thus learned for the first time that I am African-American), I never heard from them again and they stopped returning my calls. They never resolved my application or informed me of any deficiencies or criticisms.

7. I next approached a bank that I had worked with while running the transportation business. They informed me that they would not extend funds to start a business and would only do so after the business had established its success.

8. I was ultimately able to obtain a loan from a regional bank—but even there, I was only able to obtain $56,000, about two-thirds of the funds my business plan called for, and on a short five-year repayment period. I accepted this so that I would have minimally adequate working capital to operate the business, even though I knew it would limit Popcorn Heaven's growth and make the store's first years far more difficult.

9. As a result, I could not fully execute my original business plan. My own seed money, which I had intended as working capital, instead went to pay for construction, equipment costs, and payroll. In the early days, I had to take more out of my savings and retirement than I would have with full financing. Had I not had my own finances to draw from, I never would have been able to get the business off the ground.

10. Thus, even though my store was immediately popular, grossing between $240,000 and $290,000 each year and attracting several licensees, I lacked the capital to fully realize my plans or operate my business. With limited capital, I had to simultaneously manage the original location and oversee all franchise activities. This ultimately led me to sell the Waterloo location in 2017.

11. My first several licensees, all of whom were African-American, ran into similar problems. Despite having good qualifications and a solid business plan now backed up by the success of existing Popcorn Heaven locations, they were frequently rejected by potential lenders, given less than the full amount they sought, or received terms that seemed below market.

DECLARATION OF RESHONDA YOUNG - 3
Case No.: 4:19-cv-02572-JSW

12. The experience of my Waterloo franchise in particular confirmed something I had long suspected: that my race may have been a contributing factor to my difficulty obtaining capital. The woman to whom I sold the Waterloo store was white. Despite lacking any significant business expertise and having no better credit or income than I did, she received a $130,000 loan from the bank that provided me only $56,000. Moreover, she was given a 20-year repayment period, so that her monthly payments were roughly $1,200—a third of the $3,603 I had to pay each month while operating the Waterloo store.

13. This was not surprising to me. I come from a family of African-American entrepreneurs. My father ran a successful transportation and maintenance contracting company, but always struggled to obtain capital. When he was first purchasing a van for a company, he had to have a white employee serve as the purchaser because he could not locate a bank willing to offer a small business loan to a Black person. And even once his business had had undeniable success, with revenue in the millions of dollars, banks required my father to secure loans with his personal residence and other non-business property.

14. This is a long-standing problem for African-American residents of Waterloo. As 2018 USA Today study[2] found, Waterloo has vastly unequal economic opportunities for African-Americans. The African-American unemployment rate is more than five times higher than that for whites (23.9% to 4.4%), and African-American residents' income is just 46.8% of white residents' on average. Indeed, the study concluded that Waterloo was the single worst city for African-Americans in the country among cities with African-American populations of five percent or more.

15. While the USA Today study did not discuss access to capital, my experiences track with those of my father and of Waterloo in general (and in other areas, as my franchisees' difficulties

---

[2] Samuel Stebbins & Evan Comen, "These are the 15 worst cities for black Americans," *USA Today*, Nov. 16, 2018, https://www.usatoday.com/story/money/2018/11/16/racial-disparity-cities-worst-metro-areas-black-americans/38460961/.

DECLARATION OF RESHONDA YOUNG - 4
Case No.: 4:19-cv-02572-JSW

show). Whether intentional or unintentional, credit seems to be far more limited for African-American small business owners than for White small business owners. There is, however, no specific data that I can review to try to convince potential lenders or governmental agencies that our market is underserved and viable investment opportunities are being ignored. Nor is there any data I can use to validate my concern that I may have been the victim of discrimination, or to identify banks that are less likely to reject applications by African-American business owners at the outset.

16. As a result, I expect to face similar problems in the future as I work to expand the Popcorn Heaven chain. Given the reception I received from numerous lenders, seeking additional credit for future expansions currently seems too time-consuming and unpromising to pursue. Instead, as I try to expand Popcorn Heaven further, I will need to continue investing my own profits and savings at the outset, which will force me to expand more slowly and less ambitiously than I could with access to capital. If I had the data that I understand Section 1071 to require, though, I would very likely seek more outside capital, as I could figure out which banks would be more receptive to my application and make a more compelling case that lenders are overlooking businesses such as mine. Unfortunately, however, the long delay in issuing Section 1071 has made me doubt whether this information will ever become available. Thus, for the foreseeable future, my business expansion will be slower and less profitable than it would otherwise be.

17. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing declaration is true and correct to the best of my knowledge, information, and belief.

Dated: October 10, 2019

ReShonda Young

DECLARATION OF RESHONDA YOUNG - 5
Case No.: 4:19-cv-02572-JSW